Good morning, Your Honors. May it please the Court, my name is Spencer Skeeton, and with me is Jesse Ferrantelli, and we are appearing on behalf of the Pellet and Central Freight Lines. I would like to reserve five minutes for rebuttal. This appeal concerns the remand after removal under the Class Act and Fair Decision. The District Court found that Central Freight failed to definitively establish half its five million-pound contractors. In so doing, the District Court made three reversing errors in disregarding the circuit authority, including the Broadway, Grail Case, and La Crosse P-9 transportation. Let's start with the first error. Well, I mean, as I understand it, there are three requirements to make this class action unfavorable under CAPA. The first is that it must exceed five million. The second is that the plaintiffs must be one hundred or more. The third is that the diversity must be established on any member of the class. This is an obscene and indifferent from the defendant. And as I understand it, we're really only talking about requirement one right here, right? That's correct, Your Honor. So we're only talking about whether the matter in controversy must exceed five million dollars? That's correct, Your Honor. Okay, so I also understand that at the time of removal, the class was all individuals who worked in California for the defendant as truck drivers and were classified as independent contractors, right? That's correct, Your Honor. And then they redefined the class to only California citizens who work in California, as I understand it. The plaintiff did, Your Honor. Oh, sorry, sorry. The plaintiff did. That's correct. Your Honor, and I split hairs a little bit, they redefined the class to be California residents. Right. Sorry, I put this as it was residents. Absolutely. And what else did they do? They redefined the class to only involve work performed in California. Right. They redefined the class to exclude these defendants even though the complaint sought recovery of all costs and expenses associated with these individuals. That's correct, Your Honor. That's what I understand. I just want to make sure we're all on the same footing. That's correct, Your Honor. They did not do it by amendment, but by motion. Yeah, actually, they did it kind of on the fly, I heard. Well, I don't know whether it's motion. It was in front of the court, and it seemed as if they were motioning because the court was agreeing with them. They basically made a representation to the court of hearing that they would not include certain people in the class or certain work in the class. Essentially, it was by remand, Your Honor. We have never had an opportunity to briefly consider the new class definition that was being offered for the first time in connection with remand motion. There was no formal amendment to the complaint, you're correct. But the court allowed it and went forward with that. That is correct. In the manner of his decision. That is correct. Okay, that's what I understand. And I just want to get that in front of us as we now approach your argument and counsel's argument. So, with that understanding, Your Honor, I think that behavior that occurred in the district court in connection with remand motion was completely the fault of these courts structurally in the Broadway Grill case. And that would be, just last one, to the Circuit Judge Froder, the Broadway Grill opinion. I appreciate you going right at Judge Froder, Your Honor. I'm going there. I'm going there, Your Honor. And she wrote Broadway Grill, and I'm sure she remembers. She also wrote Lewis v. Verizon, which we'll talk about later as well. So, the Broadway Grill opinion stated, and I quote, and of course it's a new opinion, so I don't have a page site. Courts have unanimously. No, maybe Judge Froder will go ahead and remember to throw that out for her last time. Courts have unanimously and repeatedly held that whether remand is proper must be ascertained on the basis of the beatings at the time of removal. The court cited authority, noting, quote, avoiding federal jurisdiction for the post-removal amendment would turn the policy of underlying capital on its head. After all, capital was created abroad in federal court by section jurisdiction. For these reasons, this court rejected Broadway Grill's attempt to post-removal modify the class definition to only keep California citizens to the government university. The court wrote, and I quote, we have not found any other circuit decisions permitting post-removal amendment of the complaint and certainly not permitting alteration of the makeup of the class. Broadway Grill was the author. It's a great sentence, Your Honor. And that sentence controls here, Your Honor. The only distinction here, Your Honor, is in that case. You're going to get it on counter-interpretation. Let's leave that. Okay. The plaintiff says, hey, I didn't change the definition of the class here at all. All I did was redefine it, clarify it. Okay. You sit down, it's true. And I think the page, the hearing transcript, which is Appellant's excerpts of record, page 44, it's a great thing. And that is full of great material. The court said, I quote, I got the impression there were drivers that may live in another state but sometimes drive in California. Because I'm seeing one of those drivers be included in the page as well. So here the court's saying, I understand drivers who live in another state but drive through California are included in the class. And Mr. Bowman concludes that in some sense. Quote, no, our class is limited to the residents of California. And the court responds, okay. And Mr. Bowman says, and for claims that occur inside of California, which is another issue we raised. And the court says, I quote, the complaint itself doesn't say that, though. It's not that specific, right? And Mr. Bowman says, right. The complaint itself is pretty close. And the court says, okay. But I take it that part of this motion clarifies it. And then Mr. Bowman says, correct, your Honor. So what we have here is on the fly representation, basically the dialogue at the hearing as to what the complaint were, what the plaintiff would not be seeking, and what the clause were, what all that imparts. And that runs completely through the following group. The next hearing, if I might, Your Honor. Tell me about the hearing. It's at 8.08. Thank you. It's right there on the clock, and we'll show you. Thank you. I appreciate it. The next hearing that we'd like to discuss is, hearing number two is, in deducting lease in non-California miles from the amount of controversy. The district court conflated the amount in controversy with the amount of damages likely recoverable. What the court did, as I understand it, is the court was saying, I'm going to throw this out on summary judgment, so why worry about it too much. That's exactly right. We had a merit securing, essentially. But the court said, more likely than not, these claims are going to be recoverable, and therefore I'm going to reduce the amount in controversy based on what I think is going to happen in trial. And that behavior runs directly out of this court's ruling being the fuel cost versus non-transportation case. In that case, the district court's lawyer, that was a federal classification case very similar to this case, the defendant removed her capital and submitted an amount in controversy of $44 million, which included the lease and fuel costs. The case was remanded, and the case was reversed in circuit session. Quote, our plan is to succeed under claim that the defendant will need to reimburse them for expenditures related to the ownership and operation of their trucks including lease-related costs and fuel costs. What did they do in this case? Argued, well, we might not be able to review all of this expense reimbursement theory, and there's difficulties, but we can put all this expense reimbursement theory. And this court responded, look, while you're lying to me, I'm recovering with a complaint, please. And the court said, plaintiffs were conflating the amount in controversy with the amount of damages ultimately recoverable. And that's precisely what occurred in this case. The amount in controversy is what his plan requested. The amount ultimately recoverable is a different issue. And that's, we're not supposed to be engaging in detailed variance analysis if you have a removal speech. This court gained Lewis' decision, back to you. As you understand it, and I'm just trying to make sure I understand your argument, the court is to accept the allegations of the complaint as true and assume that the plaintiff will get a verdict on each claim, correct? That's correct, Your Honor. That's correct. And in the opinion drafted by Judge Schroeder, in the Lewis v. Verizon case, the court stated the amount in controversy, there it is, the amount in controversy. I've got it, I've got it. It's page 400. The amount in controversy is simply a testament of the total amount in dispute, not a prospective assessment of the defendant's liability. And so that's the governing standard here. So what did they do, what did they request? Here, the plaintiff is saying, well, we're probably not going to recover on these payments because it uses the Northern District decision to apply them to others. It's a strata case, it simply suggests we can't recover. But what they don't point, Your Honor, is to our cases which do allow recovery on those related units. And I want to point, Your Honor, is to a case called Garcia v. Seacrow Logics. In Garcia v. Seacrow Logics, and that is 238 Calab 4th, 1476, the plaintiff's just like the plaintiff's in this case, sought reimbursement later. Section 2802 for lease and insurance payments deducted from their weekly paychecks as well as fuel repair expenses. The drivers were told that the trucks were always to be parked in Seacrow's yard and were not to be used for personal use. The court, according to their judgment, in favor of the plaintiff's thing, now requested, and the court then affirmed. Plaintiffs wrote their complaint to Seacrow to reimburse these related expenses under the same theory as Garcia. And here's what the executives in Paragraph 8 gave their complaint. Defendant did not allow plaintiffs and other truck drivers to use their trucks. And Seacrow Free required plaintiffs and other truck drivers to remit these payments for any personal reasons or to drive them for any other company. In essence, what they're saying is Seacrow Free controlled how they used the trucks on the parking lot for the week. It's a different allegation. The plaintiff was engaged to use trucks as his personal vehicles to transport. In the defendant's case, these vehicles were paid for. Their trucks were identified as the next moving sign in this case. They're essentially allegedly made to use the trucks for us, for our purposes. You could use them for any of the purposes you could use them for, either. But it's a different allegation. And so it suggests, as House does, that while we can't recover all that, therefore, should be carned out as absurd. This is just not the case. There's authority that goes in favor and there's authority that goes against them. And we shouldn't be engaging in a merits analysis of this tragedy. Kappa is a very strange statute, because it makes everybody argue the opposite of what they usually argue. The tension is very thick, Your Honor. We're essentially trying to argue here to get the case back in federal court. Here's what the plaintiff could do. Here's the great argument. To vandalize the damages they're trying to minimize. That's correct. That's correct. And the same holds true for the actual territorial application of the California law. If we were, again, solving the Oracle Toughwater Marine case, I would essentially be arguing to Your Honor, as well, that the California law doesn't necessarily stop at California borders. It possibly could apply across state lines. For example, Judge Tiger recently, in the Northern Kentucky Bernstein case, said California law applies to Virgin Airline employees. If in your field, you work 25% of the time in the state of California, that's a no-paragraph period, which in our case. So I have to mention that, because it shows that the California law doesn't necessarily stop at the state's borders. And it certainly engages on analysis. So I'm making an artificially false definition due to state boundaries. But maybe it's a tension, Your Honor. At the end of the day, what you're saying is that there is inquiry. And while you can remand, it's inappropriate. That's right. That's exactly what I'm saying. And I do believe, ultimately, we've all heard it on the arguments. And I expect it to be on the counter-arguments. But that's not the issue. Maybe you ought to turn to your third error. The third error, Your Honor, is simply what you're saying to the standard. You're stating things like, number one, counsel on their briefs. And there's this focus, so to speak, on the quality side of the appeals case. And it's not true. We know from the Dartmouth-Cherokee, there's no anti-monthly presumption in California. So let's start there. The second thing is the court, in its order, said that if you establish the amount of consumers, what does that mean? At least, inclusively. Well, what does inclusively mean? Well, there's no reasonable doubt. That's not the standard to be applied. It's a preponderance. And we know preponderance is the only thing. It's not. It's a vector on the scale, on the right-hand side versus the left. And it appears, Your Honor, based on both the five amendments and, essentially, rewriting the file's definition, that they really don't ask to the judge, but very inclusively establishing the amount of reasonable doubt that $5 million not only was in controversy, but was not true. Let me ask you the last question, which should we then remand this on an open record and let the judge look at it again? Absolutely, Your Honor. I think you should remand it in reverse with instructions that we've backed out of. Really cool. Let me tell you why. First, method one, we get to the amount of controversy by looking at the fuel expenses. And again, it's nothing new for you. If you just look at fuel expenses and you don't draw an arbitrary line, you get the same re-entry. Your bond declaration establishes $5 million in controversy for a 10-month window on fuel expenses. Number two is that we have the military declaration which establishes $7.45 million in controversy for fuel expenses, alone for the 4-year window, saving $5 million for a 10-month window, and $7.45 million for a 4-year window on fuel expense declaration. There are other ways, but I said we didn't need to look at it. But there is that subclause on there, that's on the 3-year window for which the record is spared, within the subclause of the 3-year period that under the 28.02 claim for a dangerous bond. So there's a clause on the 3-year period where you just spare the record. No, it's plus 3 years, plus one for the competition that we saw before on the opening. In that class, the military declaration establishes the fuel expenses being $7.45 million, the lease expenses being $2.25 million, and the new bond declaration establishes $5 million alone in fuel costs that didn't do anything. So all aspects of the clause in subclause are covered on the record and disemployed, so we should just get on with working with the case. Okay, thank you. Thank you for your argument. We're ready for you, Mr. Skeen, or excuse me, Mr. Norhart. Norhart. Good morning. And not only are we ready, but you've got Judge Schroeder sitting up here. I'm fully aware that in the intervening time between this motion... Let me just say good morning. Steve Jones, Justice of the Court, Mute Justice of the Court. My name's Corey Halpern. I represent the appellee, Jean Diffridge Henry. And let me say, you know, I'm very aware of the fact that the Broadway Grille decision came out in the intervening time between the decision in the district court, and I hope you stand here today, and my apologies that my brief didn't address the Broadway Grille decision. It came out a few days before my brief was due, but the decision was signed, and the real concern as a district judge, I would have with this is, we're going to get into merits, issues, dispositions, and three-man stages, the plaintiff bar, really want a substantive decision that early be appraisable, and substantiality could be gained by certification, and that's two steps down the road after motions to dismiss, and clearly one uphold, and on the fine, re-characterization of the clause in the court making substantive decisions, basically at the beginning of the case. I certainly think that's the struggle here. The preponderance of ethics standard somewhat requires an inquiry like that. That's the inventory showing. However, here's what I do. I'll posit this. For me, it's very similar to the statute of limitations in this case. We can get into some of the issues. As your Honor asked, what about the three-year, the difference between statutes, and counsel's correct that I think we're, under UCL, we're looking at a four-year statute for the implications here. However, when I get to that, why don't we consider damages for 10 years to this class? Because we know that as a matter of law, the statute of limitations for the damages is four years, so we don't let you defend it, and then after 10 years of damages, we hope we can straighten them before, and that's exactly what we do here as well. Why don't we consider it in that complete time period that you've pled in the complaint for your class, and so you get the chance to define things here. You cast a very broad net in the state court as to the percentage and the territoriality issues, and then try to step back once you're in federal court to have gotten a swathe in order to go to state court, but that appears to be what you wanted to do, but you're defining things in the pleadings from the get-go, and that's really where we should be looking at the inquiry off of what you folks think. I didn't limit the damages in any way, though. I limited the class to four years, certainly, but the damages and costs of actions, they're not limited by anything other than the statute of limitations, and yet when we look at the amount of controversy, we consider the statute of limitations, and that's exactly what I'm arguing here, too, is that we can't use categories of damages that aren't recoverable as a matter of law in order to meet the amount of controversy requirement, and that's essentially what the court's doing here, and I think what's important to me here is that it's the evidence in the record. I didn't put the evidence in the record about what these suspensives are. It's defendant's evidence. You can't rely on the O'Brien Declaration. You just can't see how a one-line sentence that we then show to be inaccurate on its face could be the basis for defining the amount of controversy in the law, and you show it to be inaccurate by saying one district court. There's currently a California court on the field that has a different view as the appellants of the land, and so it's not like a three-year, a four-year period of time where I was there. It's very viable. You're talking about perhaps evolving law or at least regionalized differing and lower courts, aren't you? No, I think I'm aware of that Court of Appeal case, and I think it's very specific to its facts, which is there were deductions from employee checks. It's a 2-2, a labor code 2-2-1 claim, which the deductions were for leasing. That's a different situation here than when somebody's paying money out of their pocket and then saying it's a necessary business experience. There's additional facts in that, and I think it's the only case that's ever come out that direction, and it's really to do with the fact that there were these deductions for paychecks, which is an independent violation of labor code. So I don't know that it stands to resist that proposition, although I would love it if we could, but it's just... When we wrote in the complaint, we never told the lease payments were in the complaint. It's the defendant that's saying, oh, they're seeking lease payments. It says the cost of expensive owning or leasing or repairing. Now, look, there's a lot of costs of leasing a vehicle, and certain costs may be recoverable, but lease payments may not be. And so when I read the first-minute complaint, it states twice that the defendant required the class to remit the lease payments for the trucks. When I read the first-minute complaint, it states three initial times that the class seeks to recover all costs and expenses for leasing the trucks. That's right in the complaint. If lease payments were recoverable, the lease payments would be sought, or, for example, the payments for the car loan, if those were recoverable, I would be happy if that was sought. My worry is what you stated in your complaint. I mean, you can get up here and say you don't do it, and now you want to amend the complaint, but I'm saying what did they want to recover? I'm saying if I put a... Are you saying the complaint... I'm saying there are things in the complaint that may not be legally sustainable, and just like if I had put a five-year class, it would be a four-year class. So it is my understanding that your statement just before this was that the defendants were the only ones talking about that you wanted to recover lease payments in the complaint, and I said no. The first-minute complaint says you want to recover. I think we broadly stated we want all costs recovered from leasing the car to the extent they're recoverable. I understand you're arguing the opposite of what... Again, it's a PDR, but I have to deal with the reality of this. I have to at least know I'm going to be an item that the court would likely ever award, whether it's C-40. ...standard that you want us to articulate. I think the standard... You want us to articulate a standard that is subject, that is normal, when an amendment would be futile, or do you want a summary judgment standard, or do you want a dismissed standard? What standard are you arguing for? I think when we deal with these types of things, the more parsed-down categories of damages, I think as a matter of... These things are as a matter of... I'm sorry, I didn't quite... I think the standard articulated in the BAR, which is the consideration of real evidence, the reality of what is at stake in the litigation, and using reasonable assumptions underlining the theory of dismissed damages. I don't think you can do that with using the complaint in state court, and it's removed. I don't think you can then say,  disregard this part of the complaint, because I didn't really mean that, or it doesn't have any merit, and change the whole complaint. That's what you... That's essentially what you're arguing you could do, which I don't think you'll want, but it's been... Well, you know, my view of it is that I don't think anywhere in state court a complaint may be pled for work outside of California. I think that's a defense construction in order to reach that threshold. But when I plead a complaint in state court, I'm not speaking for people in Oklahoma. I'm not speaking for work in Oklahoma. Maybe you could write that more clearly. Words to the wise. I appreciate it. I appreciate it. And, you know, when you're pleading these things, you have the opportunity to both plead the entire case, as well as you can, because it's class, but at the same time... But when you're just a candidate, it's very difficult. And I agree. And the law is evolving on this court, as well, where, you know, what might be... what might have been thought to be okay at Benko is not quite the same under Broadway Trial, and that's what we're faced with. But I do think there has to be some sort of limit on what a defendant can come and say and make in the categories of damages that ultimately are not recoverable, as a matter of law, for work outside of California. I don't think you can just... Thanks. Judy, are you suggesting... State court complaint. Are you suggesting when I read your complaint, I cannot suggest that you're seeking damages for work outside of California? In your own mind, and that may be what you were thinking, when I read your complaint, I frankly couldn't see how you were limiting only to California work. I just don't see how it could be interpreted that I was seeking work for California when it's just presumption against that. And then the defendant... You explained there's a defendant's burden to show the evidence here. I mean, the evidence before this trial court didn't establish that work outside of California would be recoverable. Somebody comes to San Francisco from a convention. That's not... That person comes here for a day. They're not subject to California's range of hour laws. That's a transitory visit. I'm saying that the defendant, if they're going to use out-of-state miles, has to sustain their burden to show that those out-of-state miles could be recoverable. And it would be, I think, a standard, very similar to a motion to dismiss. I think you'd have to show that you certainly need to think about a caution proceeding on some basis in law and in fact. And so the defendant is the one who broke it out. They can't see it right in decorations, which I can't imagine any court would be able to rely on that. So then we have the Millicent Declaration, and the Millicent Declaration provides us with information about miles driven in California and outside of California. And that's the only information the court had. I didn't ask the court to... We argued to the court that we were bringing this on behalf of people who are in California, and that's what's in the complaint. And when the court asked us for that, the California residents, we say yes. But the information the court was given was only about California residents. That was from the defendant prior to the in-court argument. So... It's what I... I mean... We're at a crossroads here trying to figure out how... how count is to be used. And the important part here for this case is it's not that we're avoiding federal court. It's that we've been told that we're... It's in the record that it's going to be facing a motion to transfer out to Texas. And so now we have a California resident who tries to bring California claims in state court, and he's going to be in West Texas in a remote farm. And so that's really the... I mean, when you ask the question, why I don't want to be in the federal court, that's the U.S. law requires that. Okay, I just didn't want to let it go. So... Just like... I feel like it's just like the statute of limitations, that you have to take into account the law that sort of builds around the framework of some of these... If I apply for punitive damages in here with no basis for that, I'd, you know, be facing a labor court claim that I don't have, or that's perhaps not the best example. But if I had a claim in here that something that, you know, mental distress damages or something that was just not recoverable in these calls to action, you know, to the defendant, I would say, oh, punitive damages could be over $5 million and will be removed. Every case is going to get removed. And I think that's the concern here. If one line, a conclusory statement, a declaration is relied upon, or categories of damages that don't exist in the legal framework are to be considered, then every case is going to get removed. All right. With that, I would concede my time to my colleague. Thank you. I think you have a minute. I have a minute. Your Honor, let's focus on the complaint. Was the complaint limited to California residents? No. It was pled on behalf of the class and to the performed work in the state of California. Why is that? Because this court's opinion in the Oracle tells us that California applies its legality according to work performed. In California, whether that work is performed by the California residents or by the state residents. What we did is we submitted the declaration that was limited to the residents. I was still buying declarations and then said, okay, let's make the case about California residents only. And it kept appearing back. It was a moving target. We had to remain by English. We never had an actual solidified complaint from which we could get help. Even with that said, I think just as much as any other questioner or judge will be doing these questions, can you find California jurisdictions that have been through three days of therapy to finish this case with a request that the court reverse and do that with instructions that California jurisdictions do not. Any questions, Your Honor? I think we have none. Thank you very much. Case 1715993 is now submitted and we will adjourn for the day.
judges: Schroeder, N.R. Smith, Battaglia